**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **NORTH COAST RIVERS ALLIANCE,** *et al.*, | **1:16-cv-00307-LJO-MJS** |
| **Plaintiffs,** | **ORDER FOR SUPPLEMENTAL BRIEFING RE REQUEST FOR VOLUNTARY REMAND (Doc. 28)** |
| v. | |
| **UNITED STATES DEPARTMENT OF THE INTERIOR,** *et al.*, | |
| **Defendants,** | |
| **WESTLANDS WATER DISTRICT,** *et al.*, | |
| **Intervenor-Defendants.** | |

This case concerns approval by the United States Department of the Interior and its member agency, the United States Bureau of Reclamation (collectively, "Federal Defendants," "Reclamation," or the "Bureau"), of six interim renewal contracts which authorize delivery of water from March 1, 2016 through February 28, 2018 from federal reclamation facilities to certain water districts served by the federal Central Valley Project ("CVP") and provide for repayment of capital construction costs, as well as operational and maintenance expenses associated with CVP facilities ("2016-18 Interim Contracts"). Doc. 1 (Complaint); Doc 18-2 at ECF p. 12 & 22 of 67. Plaintiffs allege, among other things, that Federal Defendants issued a deficient Environmental Assessment ("EA") and associated Finding of No Significant Impact ("FONSI") prior to approval of the Interim Contracts, in violation of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq*.

1

This case is related to an earlier case, *Pacific Coast Federation of Fishermen's Ass'ns v. U.S. Dep't of Interior* ("*PCFFA*"), 1:12-cv-01303-LJO-MJS, which concerned a similar challenge to the NEPA review performed in connection with eight Interim Contracts that covered the period of time from March 1, 2012 through the end of February 2014 ("2012-2014 Interim Contracts"). *See PCFFA*, Doc. 47. The parties in *PCFFA* filed cross-motions for summary judgment that became ripe at the end of January 2014. In February 2014, the Court denied the *PCFFA* plaintiffs' motion for summary judgment and granted the *PCFFA* federal defendants' and defendant-intervenors' cross-motions for summary judgment on all remaining NEPA claims. *PCFFA*, Doc. 88.

The Ninth Circuit reversed in part, first finding that, despite the fact that the Central Valley Project Improvement Act ("CVPIA"), Pub. L. No. 102-575, 106 Stat. 4700 (1992), mandates renewal of long-term water service contracts, the CVPIA does not <u>require</u> Reclamation to enter into interim contracts and therefore the "no action" alternative articulated in the EA for the 2012-2014 Interim Contracts unlawfully assumed interim contract renewal. *PCFFA*, Doc. 97 at 3-6. The Ninth Circuit also held that "Reclamation's decision not to give full and meaningful consideration to the alternative of a reduction in maximum interim contract water quantities was an abuse of discretion, and the agency did not adequately explain why it eliminated this alternative from detailed study." *Id*. at 6. While acknowledging that the Reclamation Project Act mandates renewal of existing contract quantities when water is beneficially used, *id*. at 7 (citing 43 U.S.C. § 485h-1(1) & (4)), the Ninth Circuit found that Reclamation "acted unreasonably by relying on stale water needs data." *Id*. at 7. The matter was remanded to this Court with instructions to vacate the grant of summary judgment in favor of defendants on plaintiffs' claim that the EA for the 2012-14 Interim Contracts was inadequate because it did not give full and meaningful consideration to the alternative of a reduction in maximum water quantities. *PCFFA*, Doc. 97 at 4. Reclamation was directed to "consider such an alternative in any future EA for an interim contract renewal." *Id*. at 11. In particular, the Ninth Circuit indicated that "[i]n satisfying this duty, Reclamation may rely upon any water needs assessment for which the data remain accurate." *Id*.

Federal Defendants now move for voluntary remand of the present challenge to the 2016-18 Interim Contracts, indicating:

> In the present case, without any admission that an updated water needs assessment or new EA is required, Defendants have determined that performing an updated water needs assessment, and then making that assessment part of a new EA, will be a more efficient way to resolve this lawsuit without wasting judicial or agency resources on litigation. The remand would include an updated water needs assessment and a new EA based on the updated assessment and evaluation of a no-action alternative consistent with the Ninth Circuit's amended decision. Reclamation anticipates that this process may take approximately 12 months, but potentially longer in light of the complexity of the issues and the other time-sensitive environmental reviews currently scheduled in the next 6-12 months.

Doc. 28 at 4.

"A federal agency may request remand in order to reconsider its initial action." *California Communities Against Toxics v. U.S. E.P.A.*, 688 F.3d 989, 992 (9th Cir. 2012). The Ninth Circuit has recognized that "[g]enerally, courts only refuse voluntarily requested remand when the agency's request is frivolous or made in bad faith." *Id.* (citing *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001)). One way an agency may demonstrate good faith is by admitting that the reasoning adopted in its original action was flawed. *See id.* (approving voluntary remand where the agency "recognized" that its original reasoning was flawed and sought to explain its decision in an alternative manner). In contrast, bad faith may be demonstrated when an agency's position does not demonstrate a commitment to a changed approach. *See Lutheran Church–Missouri Synod v. FCC*, 141 F.3d 344, 348-49 (D.C. Cir. 1998) (finding bad faith where the agency sought remand based on a new "policy statement" that was nonbinding, where the agency could not promise any particular decision on remand, and where the Court determined that the agency was merely employing "novel" tactics to avoid judicial review); *Corus Staal BV v. United States*, 387 F. Supp. 2d 1291, 1296 (Ct. Int'l Trade 2005) (denying a remand request because the requesting party expressed no doubts about the correctness of its decision).

Plaintiffs incorrectly suggest that voluntary remand is only available when an agency admits that

its prior decision is wrong. Doc. 34 at 3. The error in this suggestion is made clear in *SKF*, the case relied upon by the Ninth Circuit in *California Communities Against Toxics* for the basic proposition that "courts only refuse voluntarily requested remand when the agency's request is frivolous or made in bad faith." In *SKF*, the Federal Circuit reviewed numerous bases an agency might advance when seeking a remand. Among those options, an "agency may request a remand (<u>without confessing error</u>) in order to reconsider its previous position." 254 F.3d at 1029 (emphasis added). The agency "might argue, for example, that it wished to consider further the governing statute, or the procedures that were followed. It might simply state that it had doubts about the correctness of its decision or that decision's relationship to the agency's other policies." *Id*. In such cases, "the reviewing court has discretion over whether to remand," and may refuse to do so if the "agency's request is frivolous or in bad faith." *Id*. "Nevertheless, if the agency's concern is substantial and legitimate, a remand is usually appropriate." *Id*. So, while refusal to admit wrongdoing is not dispositive, a reviewing court must nonetheless ensure the request for voluntary remand is made in good faith for a substantial and legitimate reason.

In trying to determine what constitutes a "substantial and legitimate concern," courts have found reconsideration appropriate where the record demonstrated that the reason for the request to remand for reconsideration was a "legitimate concern that the [ ] determination[] had serious procedural and substantive deficiencies." *See Belville Mining Co. v. United States*, 999 F.2d 989, 998 (6th Cir. 1993). The Court can identify no case among those cited by the parties or elsewhere that finds judicial and party efficiency to be sufficient standing alone. *See Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993) (acknowledging efficiency as a consideration where both sides acknowledged the record was incorrect or incomplete); *Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 134 (D.D.C. 2010) (noting that voluntary remand would preserve scarce judicial resources in case where defendant agency admitted legal error); *Sierra Club v. Van Antwerp,* 560 F. Supp. 2d 21, 24 (D.D.C. 2008) (finding remand would avoid needlessly wasting court and party resources in case where agency stated intent to carefully re-examine basis for its decision in light of new facts); *see also ASSE Int'l, Inc. v. Kerry*, ___

F. Supp. 3d ___, No. SACV1400534CJCJPRX, 2016 WL 1692806, at *2 (C.D. Cal. Apr. 20, 2016) (approving voluntary remand even though agency did not concede error where agency did indicate reconsideration was warranted in light of new information); *Frito-Lay, Inc. v. U.S. Dep't of Labor*, 20 F. Supp. 3d 548, 554-55 (N.D. Tex. 2014)(permitting voluntary remand in part to avoid waste of judicial resources where the defendant agency admitted error).

      Here, Federal Defendants refuse to admit that a new EA is required, but nonetheless propose to prepare one that includes a no-action alternative consistent with the Ninth Circuit's amended decision. They offer to do so to "resolve this litigation" and avoid the waste of judicial resources. Although an admission of error is not required, the Court believes Federal Defendants have not provided a sufficient showing that its request for voluntary remand is in good faith. In particular, the Court is concerned with Federal Defendants' refusal to acknowledge that there are parallels between the EA in this case and the EA in *PCFFA*. Like that in *PCFFA*, the EA in this case indicates that "[t]he No Action alternative and the Proposed Action include the execution of six interim renewal contracts." Doc. 18-2 at p. 32 of 67. Likewise, the EA in the present case refuses to consider a reduced contract water quantity alternative, offering similar reasons for not doing so given in the *PCFFA* EA. Under the Ninth Circuit's ruling in *PCFFA*, the EA in this case appears to be plainly unlawful in these respects.

      Where an agency's justification for voluntary remand is insufficient, courts have requested supplemental information. For example, in *United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, No. C-09-4029 EMC, 2011 WL 3607790, at *2 (N.D. Cal. Aug. 16, 2011), the district court faced a voluntary remand request from the Department of Homeland Security ("DHS") to allow DHS to correct "administrative errors" related to DHS's determination that certain immigration surety bonds had been breached. *Id.* In order to ensure that the remand was requested in good faith, rather than as a mechanism to avoid judicial review, the district court required DHS to provide further specificity about the administrative errors the agency identified in its initial breach determinations and the procedures DHS intended to put in place in order to avoid those errors in the future. *Id.*

Here, the Court will likewise permit Federal Defendants to make a supplemental showing in favor of voluntary remand pursuant to the briefing schedule set forth below. If the Court is ultimately satisfied with Federal Defendants' showing regarding remand, the question of vacatur will remain. In deciding whether to vacate an agency action, courts faced with a motion for voluntary remand employ "the same equitable analysis" used to decide whether to vacate agency action after a "rul[ing] on the merits." *Nat. Res. Def. Council, Inc. v. U.S. Dep't of Interior*, 275 F. Supp. 2d 1136, 1143 (C.D. Cal. 2002). Two factors are evaluated: (1) the seriousness of an agency's errors and (2) the disruptive consequences that would result from vacatur." *Klamath-Siskiyou Wildlands Ctr. v. NOAA Nat'l Marine Fisheries Serv.*, 109 F. Supp. 3d 1238, 1242 (N.D. Cal. 2015) (citing *California Communities*, 688 F.3d at 992). "Put differently, courts may decline to vacate agency decisions when vacatur would cause serious and irremediable harms that significantly outweigh the magnitude of the agency's error." *Id.* (internal quotation marks removed).[1] No party has provided submissions sufficient to permit the Court to evaluate properly these issues, which are complex and worthy of serious attention. Any supplemental filings should address these matters in a much more rigorous manner.

In order to provide guidance to the parties moving forward, the Court makes the following observations about the present state of the record. First, the parties do not clearly articulate which, if

---

[1] To the extent that any party seeks vacatur of the underlying Interim Contracts, the Court notes that a more onerous standard may apply to any request for vacatur that would have the same operative effect as an injunction. In *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010), the defendant agency deregulated the use of a particular genetically engineered crop based upon an EA, rather than a full environmental impact statement ("EIS"). The district court held that the agency violated NEPA by failing to complete an EIS and issued an injunction that prohibited almost all future planting of the crop pending completion of the required EIS. The Ninth Circuit affirmed. The Supreme Court reversed, observing that it is inappropriate "to presume that an injunction is the proper remedy for a NEPA violation except in unusual circumstances." *Id.* at 158.

> No such thumb on the scales is warranted. Nor, contrary to the reasoning of the Court of Appeals, could any such error be cured by a court's perfunctory recognition that "an injunction does not automatically issue" in NEPA cases .... It is not enough for a court considering a request for injunctive relief to ask whether there is a good reason why an injunction should not issue; rather, a court must determine that an injunction should issue under the traditional four-factor test [for injunctive relief.]

*Id.* at 158-59. Following *Monsanto*, at least one court has applied the traditional four-factor injunctive relief test to a vacatur request that would operate as an injunction. *See Beverly Hills Unified Sch. Dist. v. Fed. Transit Admin.*, No. CV 12-9861-GW(SSX), 2016 WL 4445770, at *5-6 (C.D. Cal. Aug. 12, 2016).

any, agency decisions they seek to vacate or preserve. For example, do Federal Defendants concede that the EA/FONSI should be vacated, but simply protest vacatur of the 2016-18 Interim Contracts themselves? Do Plaintiffs in fact seek contract set-aside?

Second, the parties touch upon but do not thoroughly explore the issue of estoppel. While the *PCFFA* plaintiffs appear to have conceded at oral argument before the Ninth Circuit that they did not include a prayer in the *PCFFA* complaint seeking set-aside of the 2012-2014 Interim Contracts, how does that impact <u>this</u> litigation, where the Complaint contains different prayer language and the record reveals no concession regarding contract set-aside has been made?[2]

Finally, Federal Defendants' off-hand suggestion that if voluntary remand is authorized in this case "each party should bear its own costs for the limited duration of this case" is supported only by a single citation to *Li v. Keisler*, 505 F. 3d 913, 919 (9th Cir. 2007). *Li* held that where voluntary remand is due to intervening caselaw, the government's position "may" have been substantially justified at the time the agency acted. *Id*. *Li* suggests a case-by-case inquiry into whether substantial justification was present by, for example, examining whether the government's action was contrary to clearly established law. *Id*. at 920. If the government intends to persist with this argument as part of its motion for voluntary remand without vacatur, further briefing on the issue will be required. Alternatively, the matter may be left for determination in a separate, post-judgment motion.

In sum, further briefing is required to resolve the present motion. Federal Defendants and Defendant-Intervenors' shall have twenty days from the date of electronic service of this order to file a supplemental brief not to exceed twenty-five pages in length <u>combined</u> (excluding any necessary attachments or exhibits). Federal Defendants and Defendant-Intervenors may allocate those pages

---

[2] The Court is underwhelmed by Defendant-Intervenors' argument that simply because the Ninth Circuit directed its holdings in *PCFFA* to "future EAs," the Ninth Circuit was somehow precluding vacatur in this case. *See* Doc. 37 at 2-3. Mootness was a major issue in the *PCFFA* appeal. *See PCFFA*, Doc. 97 at 3; Oral Argument Recording, February 9, 2016, PCFFA, Case No. 14-15512, http://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000009030. The Court interprets the Ninth Circuit's reference to "future EAs" as a reflection of its concern over mootness, not a dispositive instruction regarding equitable issues (such as vacatur) in separate challenges.

among themselves as they see fit. Thereafter, Plaintiffs shall have twenty days to file a response no more than twenty-five pages in length (excluding any necessary attachments or exhibits). No replies are authorized at this time.[3] The Court will contact the parties if it believes a hearing is necessary or would be helpful.

IT IS SO ORDERED.

Dated:   **September 23, 2016**           /s/ Lawrence J. O'Neill
                                     UNITED STATES CHIEF DISTRICT JUDGE

---

[3] The Court believes that this opportunity for further briefing obviates the need to rule on Plaintiffs' objections to the nature and timing of Defendant-Intervenor's filings thus far, *see* Doc. 38, as one mechanism for curing prejudice caused by unauthorized filings is to permit the potentially prejudiced party an opportunity to respond to new arguments.