JEAN E. WILLIAMS, Deputy Assistant Attorney General
JEFFREY N. CANDRIAN, Trial Attorney
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
Bar No. 43839 (Colorado)
999 18th St. S. Terrace #370
Denver, CO 80202
jeffrey.candrian@usdoj.gov
Telephone: (303) 844-1382
Fax: (303) 844-1350
Attorney for Defendants U.S. Department of Interior,
Bureau of Reclamation

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| NORTH COAST RIVERS ALLIANCE, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF THE INTERIOR, ET AL., <br><br> Defendants, <br><br> and <br><br> WESTLANDS WATER DISTRICT, ET AL., <br><br> Intervenor-Defendants. | CASE NO. 1:16-cv-00307-DAD-SKO <br><br> **FEDERAL DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST CLAIM** <br><br> DISTRICT JUDGE DALE A. DROZD <br> MAGISTRATE JUDGE S. OBERTO |

**POINTS AND AUTHORITIES IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST CLAIM**

**TABLE OF CONTENTS**

I. INTRODUCTION..........................................................................................................1

II. BACKGROUND...........................................................................................................1

    A. The Court's Prior Mootness Inquiry................................................................3

    B. Plaintiffs' Second Amended and Supplemental Complaint .............................5

III. STANDARD OF REVIEW ..........................................................................................6

IV. ARGUMENT................................................................................................................7

    A. Plaintiffs' First Claim is Moot Because the Six Interim Renewal Contracts No Longer Exist Under the CVPIA............................................................................7

    B. Plaintiffs' First Claim No Longer Satisfies the "Capable of Repetition Yet Evading Review" Exception to Mootness...........................................................9

V. CONCLUSION........................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Ass'n of Am. Med. Colls. v. United States*,
  217 F.3d 770 (9th Cir. 2000) ...................................................................................... 7

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
  598 F.3d 1115 (9th Cir. 2010) .................................................................................... 6

*City of Erie v. Pap's A.M.*,
  529 U.S. 277 (2000) ................................................................................................ 7, 8

*Clark v. City of Lakewood*,
  259 F.3d 996 (9th Cir. 2001) ...................................................................................... 7

*Fraley v. Facebook, Inc.*,
  830 F. Supp. 2d 785 (N.D. Cal. 2011) ........................................................................ 6

*Gator.com Corp. v. L.L. Bean, Inc.*,
  398 F.3d 1125 (9th Cir. 2005) .................................................................................... 7

*Grant Cty. Black Sands Irrigation Dist. v. U.S. Bureau of Reclamation*,
  579 F.3d 1345 (Fed. Cir. 2009) ............................................................................. 1, 2

*Hall v. Beals*,
  396 U.S. 45 (1969) ....................................................................................................... 7

*Honig v. Doe*,
  484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) .............................................. 10

*Kokkonen v. Guardian Life Ins. Co.*,
  511 U.S. 375 (1994) .................................................................................................... 6

*Murphy v. Hunt*,
  455 U.S.478 , 102 S.Ct.1181 (1982) ....................................................................... 10

*Pac. Coast Fed'n of Fishermen's Ass'ns v. U.S. Dep't of Interior*,
  655 F. Appx. 595 (9th Cir. 2016) ......................................................................... 3, 10

*Preiser v. Newkirk*,
  422 U.S. 395 (1975) .................................................................................................... 7

*Pub. Utilities Comm'n of State of Cal. v. F.E.R.C.*,
  100 F.3d 1451 (9th Cir. 1996) .................................................................................. 10

*Roe v. Wade*,
  410 U.S. 113, 93 S.Ct. 705 (1973) ........................................................................... 10

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) .................................................................................... 6

*San Luis Unit Food Producers v. United States*,
  709 F.3d 798 (9th Cir. 2013) ...................................................................................... 2

*Thomas v. Anchorage Equal Rights Comm'n,*
    220 F.3d 1134 (9th Cir. 2000) ..................................................................................7

*Warth v. Seldin,*
    422 U.S. 490 (1975) ...............................................................................................6

*Westlands Water Dist. Distribution Dist. v. Nat. Res. Def. Council,*
    276 F.Supp.2d 1046 (E.D. Cal. 2003) ................................................................. 7, 9

*White v. Lee,*
    227 F.3d 1214 (9th Cir. 2000) ..................................................................................6

**Statutes**

43 U.S.C. § 371 ..................................................................................................................2

43 U.S.C. § 485h(d) ...........................................................................................................2

43 U.S.C. § 485h(e) ...........................................................................................................2

Central Valley Project Improvement Act § 3404 ......................................................... 2, 3

Central Valley Project Improvement Act § 3406(a) .........................................................2

Central Valley Project Improvement Act § 3409 .............................................................2

Pub. L. No. 114-322, 130 Stat. 1628 (2016) ................................................................. 1, 3

Pub. L. No. 57–161, 32 Stat. 388 (1902) ..........................................................................2

## I. INTRODUCTION

Plaintiffs bring five claims against Federal Defendants United States Department of Interior and United States Bureau of Reclamation (together, "Reclamation") in their Second Amended and Supplemental Complaint for Declaratory and Injunctive Relief ("Second Amended Complaint" or "SAC"). This motion concerns only the first claim, which challenges Reclamation's National Environmental Policy Act ("NEPA") analysis for six interim renewal water service contracts ("Interim Renewal Contracts") that Reclamation approved pursuant to the Central Valley Project Improvement Act ("CVPIA"). Specifically, Plaintiffs challenge the revised NEPA analysis for six Interim Renewal Contracts approved for 2016-2018 and the NEPA analysis for the reauthorization of the same six Interim Renewal Contracts for 2020-2022.

With regard to the NEPA analysis for the 2016-2018 contracts, this Court previously reasoned that the claim is "technically moot" because the contracts expired, but that the claim fell within the mootness exception because the two-year contracts were capable of repetition. ECF No. 101 at 3. The mootness exception no longer applies because the six Interim Renewal Contracts cannot be reauthorized under the CVPIA. Reclamation converted the six Interim Renewal Contracts, which were reauthorized for 2018-2020 and 2020-2022, to repayment contracts under the Water Infrastructure Improvements for the Nation Act ("WIN Act"), Pub. L. No. 114-322, § 4011, 130 Stat. 1628 (2016). Because of the conversions, the first claim does not represent a live controversy. The Court can no longer grant Plaintiffs' requested relief and a decision on the first claim would amount to an unlawful advisory opinion. Consequently, the Court lacks subject matter jurisdiction over Plaintiffs' first claim. The Court should dismiss the claim under Rule 12(b)(1).

## II. BACKGROUND

The Reclamation Act of 1902 "laid the groundwork for a vast and ambitious federal program to irrigate the arid lands of the western states." *Grant Cty. Black Sands Irrigation Dist. v. U.S. Bureau of Reclamation*, 579 F.3d 1345, 1351 (Fed. Cir. 2009); *see* Pub. L. No. 57–161, 32 Stat. 388

(1902), *as amended*, 43 U.S.C. §§ 371 et seq. To ensure the federal government was reimbursed for its significant upfront investment in Western water projects, Congress, *inter alia*, authorized Reclamation to enter into short or long-term water service contracts with project beneficiaries. *See* 43 U.S.C. §§ 485h(d),(e). In general, the beneficiaries pay back a portion of the federal government's construction costs through these contracts. *Id.*; *see Grant Cty. Black Sands Irrigation Dist.*, 579 F.3d at 1351-52. Relevant here, Reclamation may contract with irrigation districts in California for the delivery of water from the Central Valley Project ("CVP").

Under the CVPIA, Reclamation is required to operate the CVP first, for river regulation, improvement of navigation, and flood control; second, for irrigation, domestic uses and fish and wildlife mitigation, protection and restoration purposes; and third, for power and fish and wildlife enhancement. *See* CVPIA, § 3406(a); *San Luis Unit Food Producers v. United States*, 709 F.3d 798, 801-02 (9th Cir. 2013). The CVPIA required Reclamation to prepare an environmental impact statement under NEPA to consider the programmatic impacts of CVPIA implementation, which it did in 1999 (SAC at ¶ 52), and thereafter to prepare appropriate site-specific environmental documentation for each long-term water service contract renewal within the CVP. *See* CVPIA, §§ 3404, 3409. Pursuant to section 3404(c)(1) of the CVPIA, Reclamation has the authority and discretion to issue Interim Renewal Contracts until a long-term contract is executed. Successive Interim Renewal Contracts are limited to two years. CVPIA § 3404(c)(1). In connection with the approval of Interim Renewal Contracts, Reclamation has historically issued an Environmental Assessment ("EA") and a Finding of No Significant Impact ("FONSI") under NEPA. SAC at ¶ 38.

In early 2016, Reclamation approved six, two-year Interim Renewal Contracts involving water deliveries to Westlands, Pajaro Valley Water Management Agency, and Santa Clara Valley Water District. SAC at ¶ 38. On March 4, 2016, Plaintiffs filed their original complaint in this matter, challenging the EA and FONSI for these six contracts. SAC at ¶ 39. In response to the

decision in *Pacific Coast Federation of Fishermen's Associations v. United States Department of Interior* ("*PCFFA*"), 655 F. Appx. 595 (9th Cir. 2016), in May 2017 Reclamation issued a revised EA and FONSI for the six 2016 Interim Renewal Contracts. *Id*. at. ¶ 44. The parties submitted summary judgment briefs on the adequacy of the revised EA in 2018. ECF Nos. 85, 90-97. The Court has not ruled on the motions at this time.

## A. The Court's Prior Mootness Inquiry

After the parties submitted their summary judgment briefs related to the NEPA analysis for the six 2016 Interim Renewal Contracts, Reclamation alerted the Court that it "no longer intends to pursue the issuance of new long-term water service contracts to Westlands under the authority of CVPIA § 3404. Rather, based on the authority and direction provided in the [WIIN Act] Reclamation intends to convert Westlands' existing water service contracts into repayment contracts. . . ." ECF 100 at ¶ 3. Section 4011 of the WIIN Act requires Reclamation, at the request of a contractor, to convert agricultural and municipal water service contracts to repayment contracts to allow for prepayment of construction costs that otherwise would have been repaid to Reclamation over an extended period of time. *See* Pub. L. No. 114-322, § 4011(a), 130 Stat. at 1878. However, Reclamation explained to the Court it was not sure when the conversions of the six Interim Renewal Contracts would be completed. ECF No. 100 at ¶ 5.

The Court issued an order on March 19, 2019 (ECF No. 101), where it requested supplemental briefing from the parties on the issue of mootness. Pointing out that it has a *sua sponte* obligation to determine whether a case is moot, the Court reasoned:

> This case <u>already is technically moot</u> because the 2016-18 Interim Contracts have expired. However, pursuant to the Ninth Circuit's ruling in *Pacific Coast Federation of Fishermen's Associations v. U.S. Dep't of the Interior*, 655 F. App'x 595, 597 (9th Cir. 2016), '[t]he short duration and serial nature of Reclamation's interim water contracts place plaintiffs' claims within the mootness exception for disputes capable of repetition yet evading review.' What the Court needs information on now is whether this mootness exception still applies to the contracts at issue in this case.

1:16-cv-00307-DAD-SKO
Federal Defendants' Motion to Dismiss

3

ECF No. 101 at 3:3-10. In response, Reclamation outlined the anticipated process for converting water service contracts into repayment contracts under the WIIN Act (ECF No. 102 at ¶ 7) and updated the Court as to the progress of these conversions through frequent status reports. *See* ECF Nos. 111, 112, 115, 116, 118, 119, 122. Approximately 70 CVP contractors requested that their water service contracts be converted to repayment contracts under the WIIN Act. ECF No. 116 at ¶ 1.

On November 8, 2019, the Court issued an order that stated: "Plaintiffs' claims, which concern a significant federal water service contract, are not technically moot. Yet, all signs lead the Court to believe that the issues to be adjudicated here will be rendered moot in the near future." ECF 110, 4:11-13. The Court noted that it "cannot in good conscience ignore the fact that expending its scare resources on adjudication of <u>this</u> case is likely to waste time that could be re-allocated to the many other matters before it—matters that are more likely to have lasting impact." *Id*. at 4:15-17. The Court decided to hold the pending summary judgment motions in abeyance and directed Reclamation to continue updating the Court on the progress of the WIIN Act conversions relevant to the six Interim Renewal Contracts at issue. *Id*. at 4-5.

Because the WIIN Act conversions for these six contracts were not complete when the 2018-2020 contracts expired on February 29, 2020, Reclamation alerted the Court that it reauthorized six new two-year Interim Renewal Contracts that took effect on March 1, 2020, so water deliveries could continue. ECF No. 116 at ¶¶ 3, 5. Reclamation prepared an EA and FONSI for these six new re-authorizations. *Id*. Reclamation also updated the Court that it reached agreement on Westlands' primary and largest WIIN Act contract conversion, but that the effective date for this conversion would be June 1, 2020. *See* ECF No. 116 at ¶ 2. On March 29, 2020, the Court issued an order that provided, in part: "[A]ll signs continue to lead the court to believe that the issues to be adjudicated here may well be rendered moot in the very near future." ECF No. 117 at 4:8-11.

On July 15, 2020, Reclamation alerted the Court that Westlands' primary repayment contract was in effect, ECF No. 122 at ¶ 1, and that the other five Interim Renewal Contracts were also converted into repayment contracts and in effect. *Id.* at ¶¶ 3-4. Therefore, the six Interim Renewal Contracts that are addressed in the NEPA document challenged in Plaintiffs' original and first amended complaints no longer exist; they have all have been converted into repayment contracts under the WIIN Act. *Id.* at ¶ 4.

### B. Plaintiffs' Second Amended and Supplemental Complaint

The Court granted Plaintiffs' request to amend its complaint for a second time on August 28, 2020. ECF No. 126. In its order, the Court noted that Plaintiffs' original claim challenged the NEPA analysis for six 2016-2018 Interim Renewal Contracts, but that these six contracts had been converted into a repayment contracts under the WIIN Act. *Id.* at 1-3. "Notably," the Court pointed out, "the proposed amended complaint does not abandon plaintiff's original claims against the 2016–18 Interim Contracts (the pre-conversion water service contracts). Rather, plaintiffs add closely related NEPA challenges to the new contracts along with other related claims." *Id.* at 3:12-15. The Court concluded that while it "maintains significant mootness concerns about the claims against the original 2016–2018 water service contracts, the new claims are not obviously futile." *Id.* at 4:8-10.

Indeed, Plaintiffs' Second Amended Complaint retains its challenges to the six Interim Renewal Contracts, issued under the CVPIA, even though these contracts no longer exist. Plaintiffs' first claim in their Second Amended Complaint challenges 1) the revised EA and FONSI for the six 2016-2018 Interim Renewal Contracts, and 2) the EA and FONSI for the same six Interim Renewal Contracts, reauthorized for the 2020-2022 time period. SAC at ¶¶ 2-3, 62-73. Specifically, Plaintiffs allege:

> Reclamation's failure to prepare legally adequate EAs and FONSIs for the 2016 and 2020 interim contracts is arbitrary and capricious, a failure to proceed in the manner required by law, and not supported by substantial evidence, and thus in violation of NEPA. Accordingly, those interim contracts and their EAs and FONSIs should be declared unlawful and set aside under the APA.

SAC at ¶ 73. Plaintiffs allege that their injuries are fairly traceable to these actions (SAC at ¶¶ 25-26) and request the following relief: "A declaration that defendants acted contrary to law by issuing FONSIs for the 2016 and 2020 interim contract renewals based on EAs that are legally and factually inadequate." SAC at 45, ¶ 1. And "[a]n injunction ordering defendants to withdraw their FONSIs for the 2016 and 2020 interim contract renewals and to prepare an adequate EA for each of those interim contract renewals before considering them for approval as required by NEPA." *Id.* at 45, ¶ 2.

## III. STANDARD OF REVIEW

"Because standing and mootness both pertain to a federal court's subject-matter jurisdiction under Article III, they are properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), not Rule 12(b)(6)." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A motion pursuant to Rule 12(b)(1) may be either a "facial" challenge, disputing the formal sufficiency of the pleadings to establish federal jurisdiction, or "factual," disputing the substance of the jurisdictional allegations despite their formal sufficiency. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where a challenge is facial, the district court determines whether a pleading's allegations are "sufficient on their face to invoke federal jurisdiction . . . ." *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 793 (N.D. Cal. 2011) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). With a factual Rule 12(b)(1) attack, a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment, and it need not presume the truthfulness of the plaintiffs' allegations. *White v. Lee*, 227 F.3d at 1242 (citations omitted).

"Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the Court's jurisdiction." *Fraley,* 830 F. Supp. 2d at 793 (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010)). Until a plaintiff satisfies

this burden, a district court presumptively lacks subject matter jurisdiction. *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778-79 (9th Cir. 2000). In sum, a plaintiff must prove that jurisdiction exists in order to survive a 12(b)(1) motion to dismiss.

## IV. ARGUMENT

Plaintiffs' first claim no longer presents a live controversy because the six Interim Renewal Contracts have all been converted to repayment contracts under the WIIN Act. This Court cannot declare unlawful or enjoin these contracts—Plaintiffs' requested relief—because the contracts no longer exist. Likewise, a decision on Reclamation's NEPA analysis for the 2016 and 2020 contracts would amount to an advisory opinion because the NEPA documents no longer relate to any agency action. Furthermore, the "capable of repetition" exception to mootness no longer applies because the six Interim Renewal Contracts cannot be reauthorized under the CVPIA.

### A. Plaintiffs' First Claim is Moot Because the Six Interim Renewal Contracts No Longer Exist Under the CVPIA.

To satisfy the case and controversy requirement of Article III of the Constitution, an actual controversy must exist at all stages of federal court proceedings. *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975); *see also Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1128-29 (9th Cir. 2005). A case is moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000); *see also Clark v. City of Lakewood*, 259 F.3d 996, 1011 (9th Cir. 2001). A court may not proceed to hear an action if it has "lost its character as a present, live controversy of the kind that must exist . . . to avoid advisory opinions on abstract propositions of law.'" *Hall v. Beals*, 396 U.S. 45, 48 (1969) (per curiam); *see Westlands Water Dist. Distribution Dist. v. Nat. Res. Def. Council*, 276 F.Supp.2d 1046, 1050 (E.D. Cal. 2003) ("The court's 'role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution.'") (quoting *Thomas v. Anchorage Equal*

*Rights Commission,* 220 F.3d 1134 (9th Cir. 2000)). "The underlying concern is that, when the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated, then it becomes impossible for the court to grant any effectual relief whatever to the prevailing party." *City of Erie,* 529 U.S. at 287 (citations and internal quotations omitted).

On July 15, 2020, Reclamation alerted the Court that the six Interim Renewal Contracts, which form the basis of the NEPA documents challenged here (SAC ¶¶ 2-3), had all been converted into repayment contracts under the WIIN Act. ECF No. 122 at ¶¶ 1, 3-4. Five of the repayment contracts went into effect June 1, 2020, and the sixth repayment contract took effect on July 1, 2020. *Id.* at ¶¶ 1-4. Because these six repayment contracts superseded their respective Interim Renewal Contracts, the six Interim Renewal Contracts no longer represent a "live controversy" and Plaintiffs' first claim is moot.

The conversion of the six Interim Renewal Contracts into repayment contracts does not constitute the same action challenged by Plaintiffs in their first claim, which Plaintiffs admit. *See* SAC ¶¶ 1-4. Plaintiffs challenge the approval of the Interim Renewal Contracts under the authority of CVPIA, Section 3404(c), and the adequacy of the EA/FONSI accompanying those contracts. By contrast, the repayment contracts are permanent contracts that were executed under the authority of the WIIN Act. A different agency action under a different law.

Plaintiffs' first claim is also moot because the Court cannot grant Plaintiffs any effective relief, assuming, *arguendo*, that Plaintiffs prevailed in their first claim. Plaintiffs ask this Court to declare unlawful and set aside the 2016 and 2020 Interim Renewal Contracts and their related EAs and FONSIs. SAC at ¶ 73. The Court cannot grant Plaintiffs' requested relief as there are no longer any Interim Renewal Contracts to declare unlawful or set aside. Similarly, Plaintiffs claim that their alleged injury can be traced to Reclamation's approval of the Interim Renewal Contracts under the CVPIA. SAC ¶ 25. However, Plaintiffs' alleged injury under the Interim Renewal Contracts

vanishes if these contracts are no longer in effect under the CVPIA, or capable of repetition, as discussed below. Moreover, a decision on the NEPA documents for the 2016 and 2020 contracts would amount to an advisory opinion, as the Court would be analyzing stand-alone NEPA documents that no longer pertain to an agency action.

This Court's opinion in *Westlands v. NRDC* is instructive. There, like here, the issue concerned a Westlands water service contract. 276 F.Supp.2d at 1048. Westlands brought an action seeking a declaratory judgment that certain terms in its contract were lawful; however, the proposed contract had not been finalized or executed when Westlands filed its complaint. *Id*. The contract was pending while the required NEPA and the Endangered Species Act analyses were being completed. *Id*. Under Rule 12(b)(1), the Court dismissed the claim because the case "does not present a live, justiciable controversy. The contracts in question have yet to be finalized or executed." *Id*. at 1050. The Court also concluded that the complaint sought an unlawful advisory opinion: "the case concerns a hypothetical, rather than an 'actual,' legal dispute concerning proposed contract terms that may or may not be executed in the future." *Id*. The Court concluded that it did not have subject matter jurisdiction over the claim, and could not issue a declaratory judgment. *Id*. at 1052-53.

The same analysis applies here. Plaintiffs request a declaratory judgment that the six 2016 and 2020 Interim Renewal Contracts and their EAs and FONSIs are unlawful. SAC ¶¶ 12, 73. Like the contract in *Westlands v. NRDC*, which was not executed so there was no controversy for the Court to settle, the challenged six Interim Renewal Contracts and the corresponding NEPA analysis no longer concern a live controversy, either. The six Interim Renewal Contracts have been converted to repayment contracts under the WIIN Act. Therefore, Plaintiff's first claim is moot and the Court no longer has subject matter jurisdiction to adjudicate this claim.

**B.  Plaintiffs' First Claim No Longer Satisfies the "Capable of Repetition Yet Evading Review" Exception to Mootness.**

Before Plaintiffs amended their complaint for a second time, this Court reasoned that the "case <u>already is technically moot</u> because the 2016-18 Interim Contracts have expired." ECF No. 101 at 3:3-4. However, the Court concluded that "[t]he short duration and serial nature of Reclamation's interim water contracts place plaintiffs' claims within the mootness exception for disputes capable of repetition yet evading review." *Id.* at 3:6-8 (quoting *Pacific Coast Federation of Fishermen's Associations*, 655 F. App'x at 597). Because the Interim Renewal Contracts cannot be reauthorized under the CVPIA, considering they have been converted into repayment contracts under the WIIN Act, the mootness exception can no longer apply to Plaintiffs' first claim.

"A case otherwise moot will still be heard if it presents an issue that is capable of repetition while evading review." *Pub. Utilities Comm'n of State of Cal. v. F.E.R.C.*, 100 F.3d 1451, 1459 (9th Cir. 1996) (citing *Honig v. Doe,* 484 U.S. 305, 318–20, 108 S.Ct. 592, 601–03, 98 L.Ed.2d 686 (1988); *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 712–13 (1973). The exception applies only in "exceptional circumstances" and "provides only minimal protection to individual plaintiffs." *Pub. Utilities Comm'n*, 100 F.3d at 1459 (citations omitted). To satisfy the exception, "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* (quoting *Murphy v. Hunt,* 455 U.S. 478, 482, 102 S.Ct. 1181, 1183 (1982)).

Plaintiffs cannot make this showing. To satisfy this element, there must be a "demonstrated probability" that the same controversy will recur. *Murphy v. Hunt*, 455 U.S. at 482 (citation omitted). This element is not satisfied by "a mere physical or theoretical possibility[.]" *Id.* Plaintiffs have not demonstrated in their Second Amended Complaint that their first claim continues to satisfy this mootness exception. The "exceptional circumstances" required for the mootness exception to apply no longer exist because the six Interim Renewal Contracts cannot be reauthorized under the CVPIA. *See* ECF No. 122.

## V. CONCLUSION

For the reasons stated above, Reclamation requests that the Court dismiss Plaintiffs' first claim.

DATED: October 7, 2020.

> Respectfully submitted,
>
> JEAN E. WILLIAMS, Deputy Assistant Attorney General
> United States Department of Justice
> Environment & Natural Resources Division
>
> /s/ *Jeffrey N. Candrian*
> JEFFREY N. CANDRIAN
> Attorney for the U.S. Department of the Interior, U.S. Bureau of Reclamation

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2020, I electronically filed the **FEDERAL DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST CLAIM** with the Clerk of Court using the ECF system, which automatically will send email notification to the attorneys of record.

*/s/ Jeffrey N. Candrian*
JEFFREY N. CANDRIAN