UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTH COAST RIVERS ALLIANCE, *et al.*, | No. 1:16-cv-00307-DAD-SKO |
| Plaintiffs, | ORDER GRANTING MOTIONS TO DISMISS FIRST CLAIM FOR RELIEF AS MOOT WITHOUT PREJUDICE AND GRANTING MOTION TO COMPEL JOINDER OF ABSENT CONTRACTORS |
| v. | |
| UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*, | |
| Defendants, | (Doc. Nos. 130, 131) |
| WESTLANDS WATER DISTRICT, *et al.*, | |
| Intervenor-Defendants. | |

**INTRODUCTION**

As originally filed, this case concerned approval by the United States Department of the Interior and its member agency, the United States Bureau of Reclamation (collectively, "Federal Defendants" or "Reclamation"), of six interim renewal contracts that authorized delivery of water from March 1, 2016, through February 28, 2018, from federal reclamation facilities to certain water districts served by the federal Central Valley Project ("CVP") ("2016–18 Interim Contracts"). (Doc. No. 64, First Amended and Supplemental Complaint ("FASC").)  The 2016–18 Interim Contracts at issue in the FASC provided water service to Westlands Water District ("Westlands"), Santa Clara Valley Water District ("Santa Clara"), and Pajaro Valley Water Management Agency ("Pajaro"). (*See* FASC at ¶ 2.)  The

1

2016–18 Interim Contracts are part of a long line of two-year interim contracts executed in recent years that provided CVP water to contractors with expired long-term water service contracts, pending the anticipated execution of new long-term water service contracts after the completion of appropriate environmental review. *See* Central Valley Project Improvement Act ("CVPIA"), Pub. L. No. 102-575, 106 Stat. 4600 (1992), §§ 3402, 3404.

Plaintiffs, a coalition of environmental organizations led by the North Coast Rivers Alliance, alleged in their FASC's first claim for relief that Federal Defendants issued a deficient Revised Environmental Assessment ("EA") and associated Finding of No Significant Impact ("FONSI") prior to approval of the 2016–18 Interim Contracts, in violation of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706. (FASC at ¶¶ 45–65.)[1] Currently being held in abeyance by the court are cross-motions for summary judgment on the merits of that claim.[2] (Doc. Nos. 85, 90, 92.)

In late February 2019, the court requested input from the parties regarding the issue of mootness. (Doc. Nos. 99, 101.) The backdrop for the mootness inquiry includes the Ninth Circuit's ruling in *Pacific Coast Federation of Fishermen's Associations v. U.S. Department of the Interior*, 655 F. App'x 595, 597 (9th Cir. 2016)[3], which held that challenges to interim contracts like those at issue in this case were not moot, even though the relevant contract period had expired, because "[t]he short duration and serial nature of Reclamation's interim water contracts place plaintiffs' claims within the mootness exception for disputes capable of repetition yet evading review." *Id*. However, on March 12, 2019, in response to the court's request for supplemental briefing, the United States revealed that Reclamation "no longer intends to pursue the issuance of new long-term water service contracts to Westlands under the authority of CVPIA § 3404. Rather, based on the authority and direction provided

---

[1] Plaintiffs' second claim for relief in the FASC asserted that Reclamation violated NEPA by failing to prepare an Environmental Impact Statement ("EIS") for the 2016–18 Interim Contracts. (*Id*. at ¶¶ 56–59.) The latter claim was dismissed on March 9, 2018. (Doc. No. 78.)

[2] Given the ongoing concerns regarding mootness discussed below, the court ordered the pending motions for summary judgment administratively terminated pending re-notice if appropriate once the mootness issue was resolved. (*See* Doc. No. 117.)

[3] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

in the 2016 Water Infrastructure Improvements of the Nation ("WIIN") Act, Pub. L. 114-322, § 4011, Reclamation intends to convert Westlands' existing water service contracts into repayment contracts," which, according to Reclamation, will not be "subject to the requirements of NEPA." (Doc. No. 100 at ¶¶ 3–4.) The court ordered the United States to file periodic status reports addressing the progress of those WIIN Act conversions. (*See* Doc. No. 117.)

On July 8, 2020, plaintiffs moved to amend their complaint to add claims pertaining to the six new, repayment contracts negotiated under the WIIN Act's provisions ("WIIN Act Repayment Contracts" or "Repayment Contracts"). (Doc. No. 120.) That motion, which was unopposed, was granted by the court. (Doc. No. 126.) Notably, in their the second amended complaint ("SAC") plaintiffs did not abandon their claim against the 2016–18 Interim Contracts (the pre-conversion water service contracts), but instead expanded that claim to include challenges to the environmental review undertaken for the more recent Interim Contracts. (Doc. No. 127 (SAC) at ¶¶ 62–73 (hereinafter referred to collectively as the "Interim Contracts").) In addition, plaintiffs added related NEPA challenges to the Repayment Contracts, along with other related claims. (*See generally* SAC.)

In October 2020, Federal Defendants and Defendant-Intervenors filed motions to dismiss the claim in the SAC premised on the Interim Contracts, arguing that the claim is moot because the challenged Interim Contracts no longer exist and that no exception to mootness applies under these circumstances. (Doc. Nos. 130, 131.) In addition, Defendant-Intervenors moved pursuant to Federal Rule of Civil Procedure 19 to compel joinder of any absent contractors whose WIIN Act Repayment Contracts are being challenged. (Doc. No. 131-1 at 13–16.) The motions to dismiss, which were set for hearing in mid-December 2020, became ripe on December 8, 2020. (*See* Doc. Nos. 135, 138.)

Meanwhile, several similar, albeit not *identical*, cases concerning repayment contracts executed pursuant to the WIIN Act were transferred to the undersigned. *See Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 1:20-cv-00706-DAD-EPG ("*CBD*"); *Hoopa Valley Tribe v. U.S. Bureau of Reclamation*, 1:20-cv-01814-DAD-EPG. Considering the change of Presidential Administration, the parties to those cases agreed to stay those matters for a time in order to allow the Administration an opportunity to analyze its position prior to proceeding in those cases. Similar stays were requested and approved in other, related cases, including *Pacific Coast Federation of Fishermen's Associations v.*

*Raimondo*, No. 1: 20-cv-00431-DAD-EPG, and *California Natural Resources Agency v. Raimondo*, No. 1:20-cv-00426-DAD-EPG.  The plaintiffs in this case declined to agree to any such stay.  As a result, on April 5, 2021, Federal Defendants filed a motion to stay this case through May 12, 2021.  (Doc. No. 141.)  Over plaintiffs' opposition (Doc. No. 144), the court granted the requested stay.  (Doc. No. 146.)  The stay in this case has now expired.

For the reasons set forth below, the court will grant without prejudice the motions to dismiss the claims premised on Interim Contracts as moot.  In addition, for many of the same reasons the undersigned already set forth in a ruling in *CBD*, the court will compel joinder of the absent contractors whose WIIN Act Repayment Contracts are being challenged here.

## ANALYSIS

**A.    Motions to Dismiss as Moot Claims Concerning the Interim Contracts**

Federal Defendants and Defendant-Intervenors move to dismiss as moot the first claim in the SAC—the only claim that concerns the Interim Contracts.  (Doc. Nos. 130, 131-1 at 11–13.)  An issue is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000). "The underlying concern is that, when the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated, then it becomes impossible for the court to grant any effectual relief whatever to the prevailing party." *Id*. (internal citations and quotations omitted).  If the parties cannot obtain effective relief, any opinion about the legality of a challenged action is impermissibly advisory. *Id*. "Mootness has been described as the doctrine of standing set in a time frame:  The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n. 22 (1997) (internal citation and quotation omitted).  "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Id*. at 67.

"The party asserting mootness has a heavy burden to establish that there is no effective relief remaining for a court to provide." *In re Palmdale Hills Property, LLC*, 654 F.3d 868, 874 (9th Cir. 2011).  Mootness is evaluated on a claim-by-claim basis. *Pac. Nw. Generating Co-op. v. Brown*, 822 F. Supp. 1479, 1506 (D. Or. 1993), *aff'd*, 38 F.3d 1058 (9th Cir. 1994) (citing *Headwaters, Inc. v.*

*Bureau of Land Management*, 893 F.2d 1012, 1015-16 (9th Cir. 1989) (separately addressing mootness as to different forms of relief requested)); *see also In re Pac. Lumber Co.*, 584 F.3d 229, 251 (5th Cir. 2009) (evaluating mootness on a claim-by-claim basis).

An otherwise moot claim may nevertheless be justiciable if one of three exceptions to the mootness doctrine applies: (1) where a plaintiff "would suffer collateral legal consequences if the actions being appealed were allowed to stand"; (2) where defendant voluntarily ceased the challenged practice; or (3) for "wrongs capable of repetition yet evading review." *Ctr. for Biological Diversity v. Lohn*, 511 F.3d 960, 964-66 (9th Cir. 2007).

Here, Federal Defendants and Defendant-Intervenors argue that the claims in the SAC concerning the Interim Contracts are moot because those contracts "no longer exist." (Doc. No. 130 at 11–15; Doc. No. 131 at 11–13.) Plaintiffs oppose the motion to dismiss on the ground that the execution of the WIIN Act Repayment Contracts did not extinguish the most recent Interim Contracts. (Doc. No. 133 at 10.) In support of this argument, plaintiffs point to language in the WIIN Act Repayment Contract held by Westlands. (Doc. No. 133 at 9–11.) The terms of Westland's WIIN Act Repayment Contract clearly indicate that Westland's corresponding 2018–20 Interim Contract would be "amended" by the terms of any WIIN Act Repayment Contract once the WIIN Act Repayment Contract took effect. (Doc. No. 133-1, Ex. 1 (Executed WIIN Act Repayment Contract), Art. 7 at 9:52-57[4] (indicating that the 2018–20 Interim contract was the "Existing Contract" referenced elsewhere in the document); *id*., Art. 30 at 13:146-148 (indicating that the parties thereto "agree to amend and convert the *Existing Contract* pursuant to section 4011 of the WIIN Act . . . ." (emphasis added).)[5] While appearing to concede that this language extinguishes the 2018–20 Interim Contract

---

[4] All page references in this order are to the page numbers assigned to the documents by the court's CM-ECF system.

[5] The motions to dismiss on mootness grounds raise questions of subject matter jurisdiction and therefore arise under Federal Rule of Civil Procedure 12(b)(1). An attack on the court's subject-matter jurisdiction may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). As is the case here, where defendants bring a factual challenge to the court's subject-matter jurisdiction by pointing to materials outside the pleadings, this court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id*. The court "need not presume the truthfulness of plaintiffs' allegations," *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000), and "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction," *McCarthy v. United States*, 850 F.2d 558, 560 (9th

5

(referenced as Contract Number 14-06-200-495A-IR6), plaintiffs correctly point out that the 2018–20 Interim Contract is <u>not</u> the most recent Interim Contract. Rather, the 2018–20 Interim Contract expired due to the passage of time at the end of February 2020. (*See id*. at 93: 32–34.) Because Westland's WIIN Act Repayment Contract was not going to be executed by March 1, 2020, the parties entered into <u>yet another</u> Interim Contract, which became effective March 1, 2020 and was to run through <u>February 28, 2022</u>: Contract Number 14-06-200-495A-IR7. (*See* Doc. No. 116 at 3.) Thus, according to plaintiffs, the WIIN Act Repayment Contract did <u>not</u> extinguish 14-06-200-495A-IR7. (*See* Doc. No. 133 at 11.)

Examining only the above-mentioned documents, plaintiffs' argument appears to be correct. But, as Federal Defendants and Defendant-Intervenors point out in reply, this gap was closed in the final version[6] of the relevant 2020–2022 Interim Contract, which contained a termination provision triggered by the effective date of the corresponding WIIN Act Repayment Contract:

> 1. Except as specifically modified by this Contract, all provisions of IR6 [the 2018-2020 Interim Contract] are renewed with the same force and effect as if they were included in full text *with the exception of Article 1 of IR6 thereof, which is revised as follows*:
>
> (a) The first sentence in subdivision (a) of Article 1 of IR6 is replaced with the following language: This Contract shall be effective from March 1, 2020, and shall remain in effect through February 28, 2022, and thereafter will be renewed as described in Article 2 of IR l if a long-term renewal contract has not been executed with an effective commencement date of March 1, 2022 *or until the Contract Between the United States and Westlands Water District Providing for Project Water Service, San Luis Unit and Delta Division and facilities Repayment, which was executed pursuant to section 4011 of the Water Infrastructure Improvements for the Nation Act, Public Law 114-322, and other Federal Reclamation law, is in effect*.

---

Cir. 1988). Therefore, it is appropriate to consider the numerous referenced contracts as part of the Rule 12(b)(1) motion. In addition, these federal contracts are public records the authenticity of which is not in question and are therefore judicially noticeable. *See Nat. Res. Def. Council v. Kempthorne*, 539 F. Supp. 2d 1155, 1167 (E.D. Cal. 2008). The court need only rely upon them here to determine the content of their terms, not for the truth of the matters set forth therein, which is an appropriate use of judicial notice. *See Coal. for a Sustainable Delta v. Fed. Emergency Mgmt. Agency*, 812 F. Supp. 2d 1089, 1093 (E.D. Cal. 2011).

[6] Plaintiffs' opposition briefs reference draft versions of the 2020-22 Interim Contracts that materially differ from the final versions. (*See* Doc. No. 133 at 11.) According to plaintiffs, only the draft versions were available on Reclamation's website at the time plaintiffs' opposition brief was filed (December 2020). It is unclear to the court why this would have been the case, but it is also of no moment to the court's ruling on the pending motions.

(Doc. No. 135-1 (Contract No. 14-06-200-495A-IR7) at 3, ¶ 1 (emphasis added); *see also* Doc. No. 135 at 6 n.1 (noting corresponding language in the other five 2020-2022 Interim Contracts challenged by plaintiffs).) Although it is somewhat awkwardly worded, a plain reading of the italicized language above is amenable to only one interpretation: the parties meant to terminate the 2020-2022 Interim Contract upon the effective date of any corresponding WIIN Act Repayment Contract.

The WIIN Act Repayment Contracts corresponding to the six Interim Contracts at issue in this case took effect on various dates in June and July 2020. (*See* Doc. No. 122 (Federal Defendants' July 15, 2020 Status Report).) Therefore, the 2020-2022 versions of the challenged Interim Contracts terminated by their own provisions in mid-2020. As a result, there is no longer a live controversy pertaining to the Interim Contracts, rendering plaintiffs' claims regarding those contracts moot. Moreover, the record no longer supports a finding that any exception to mootness should be applied here.

Defendant-Intervenors specifically request that the court dismiss plaintiffs' claims with prejudice. (Doc. No. 131-1 at 13.) The court declines to do so. Because it is possible to imagine a scenario in which one or more of the WIIN Act Repayment Contracts are set aside, it is likewise possible that plaintiffs' claims could be revived. Therefore, plaintiffs' claims will be dismissed without prejudice.

**B.    Motion to Compel Joinder of Absent Contractors**

Defendant-Intervenors move pursuant to Federal Rule of Civil Procedure 19 to compel joinder of those contractors holding WIIN Act Repayment Contracts that are being challenged in this action[7] and who are not yet parties to this case. (Doc. No. 131-1 at 13–16.)

    **1.    General Legal Standard Under Rule 19**

Federal Rule of Civil Procedure 19, which governs the circumstances under which persons must be joined as parties to a lawsuit, provides in relevant part:

---

[7] The SAC discusses several Repayment Contracts between Reclamation and Defendant-Intervenor Westlands (SAC at ¶¶ 77–78), as well as Repayment Contracts negotiated in early 2020 between Reclamation and various American River Division contractors, including East Bay Municipal Utility District, City of Folsom, Placer County Water Agency, City of Roseville, Sacramento County Water Agency, Sacramento Municipal Utility District, and San Juan Water District, on February 19, 2020. (*Id.* at ¶ 79.)

7

(a) Persons Required to Be Joined if Feasible.

(1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

\* \* \*

(b) When Joinder Is Not Feasible. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

In applying Rule 19, "a court must undertake a two-part analysis: it must first determine if an absent party is 'necessary' to the suit; then if, as here, the party cannot be joined, the court must determine whether the party is 'indispensible' so that in 'equity and good conscience' the suit should be dismissed." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990). "The inquiry is a

/////

/////

practical one and fact specific, and is designed to avoid the harsh results of rigid application." *Id*. (internal citations and quotations omitted).[8]

Under Rule 19(a)(1), a party may be deemed "required" (i.e., "necessary") under one of two circumstances. First, a party may be "required" if "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A); *see also Makah*, 910 F.2d at 558 ("First, the court must decide if complete relief is possible among those already parties to the suit."). Defendant-Intervenors do not invoke this prong of Rule 19(a)(1). Defendant-Intervenors do invoke the alternative prong of Rule 19(a)(1) which deems an absent party necessary if that party "has a legally protected interest in the suit." *Makah*, 910 F.2d at 558. "If a legally protected interest exists, the court must further determine whether that interest will be impaired or impeded by the suit." *Id*. "Impairment may be minimized if the absent party is adequately represented in the suit." *Id*.[9]

### 2. Relevant Caselaw

The undersigned summarized the relevant caselaw in *CBD* as follows:

> [A] line of cases . . . apply Rule 19 to various disputes involving contracts . . . These cases stand for the general principle that "a party to a contract is necessary . . . to litigation seeking to decimate that contract." *Dawavendewa v. Salt River Project Agr. Imp. & Power Dist*., 276 F.3d 1150, 1157 (9th Cir. 2002). *Dawavendewa* concerned a lease between the Navajo Nation and the Salt River Project Agricultural Improvement and Power District ("SRP"), a power company that leased land from the Najavo Nation. *Id*. at 1153. The lease in question required the SRP to preferentially hire members of the Navajo Nation to work at the Navajo Generating Station ("NGS"). *Id*. Dawavendewa, a member of the Hopi Tribe, sought employment at NGS. *Id*. When he failed to secure employment there, Dawavendewa filed suit against SRP, accusing it of discriminating against him on the basis of his national origin in violation of federal civil rights laws. *Id*. at 1154. SRP moved to dismiss Dawavendewa's complaint for failure to join the Navajo Nation, an indispensable party that could not be joined due to its sovereign immunity. *See id*. Particularly relevant here, the Ninth Circuit reasoned that the Navajo Nation was "necessary" to the lawsuit because the suit concerned a

---

[8] Here, no party suggests any of the absent contractors cannot be joined. Accordingly, the focus of the present dispute is whether those parties are "necessary" and therefore must be joined. As a result, the court need not struggle with whether the absent contractors are "indispensable" or, relatedly, whether dismissal is appropriate in their absence.

[9] Even if impairment is not expected, necessity may be found if the court determines that a risk of inconsistent rulings will affect the parties present in the suit. Fed. R. Civ. P. 19(a)(1)(B)(ii); *Makah*, 910 F.2d at 558–59. This alternative basis for a finding of necessity under Rule 19(a)(1)(B) is not at issue here.

9

"fundamental" bargained-for lease term designed to secure for the Navajo Nation employment opportunities and income for its reservation that could be "grievously impaired by a decision rendered in its absence." *Id*. at 1157.

The Ninth Circuit has drawn a line between cases such as *Dawevendewa*, where the nature of the suit threatens to "grievously impair" an existing contractual right, and circumstances in which a plaintiff is seeking only to enforce procedural requirements. "Although an absent party has no legally protected interest at stake in a suit seeking only to enforce compliance with administrative procedures, [Ninth Circuit] case law makes clear that an absent party may have a legally protected interest at stake in procedural claims where the effect of a plaintiff's successful suit would be to impair a right already granted." *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*, 932 F.3d 843, 852 (9th Cir. 2019).

*Makah* provides an example of this distinction. In that case, the Makah Indian Tribe brought a suit challenging federal regulations allocating ocean harvest of migrating Columbia River salmon among various interest groups, including three other tribes. 910 F.2d at 557. The lawsuit also challenged the specific allocations made under those regulations for the 1987 harvest. *Id*. The Ninth Circuit held that the absent tribes were necessary parties to the extent the complaint sought re-allocation of the 1987 harvest, but were not necessary parties to the extent the complaint sought prospective injunctive relief against future decision-making under the challenged regulations. *Id*. at 559.

In contrast, in *Dine*, the Ninth Circuit considered a suit brought by a coalition of environmental organizations against agencies within the U.S. Department of the Interior after those agencies reauthorized coal mining activities on Navajo Nation land. *Id*. at 847–48. Plaintiffs alleged in *Dine* that the federal agency defendants violated both NEPA and the ESA by approving lease amendments and accompanying rights of way agreements between the Navajo Nation and power plant operators. *Id*. at 847. The Ninth Circuit held that the Navajo Nation was a necessary party to the suit because, if the plaintiffs succeeded in vacating the agency reauthorization decision, the Navajo Nation's interest in "the existing lease, right-of-way, and surface mining permits would be impaired." *Id*. at 853. This is because "[w]ithout the proper approvals, the [m]ine could not operate, and the Navajo Nation would lose a key source of revenue in which [it] has already substantially invested." *Id*. The Ninth Circuit indicated that the claims before it in *Dine* were distinguishable from the claims allowed to proceed in *Makah*, because in *Makah* the court could "tailor the scope of relief to being prospective only, preventing any impairment to a legally protected interest." *Id*.

Following these general patterns, a district judge ruling in a related case in this district found that absent water contractors were necessary to a suit that sought to "invalidate, rescind, or enjoin" Reclamation's performance under water service contracts. *Nat. Res. Def. Council v. Kempthorne*, 539 F. Supp. 2d 1155, 1186–87 (E.D. Cal. 2008). Another district judge in this same district found that absent water contractors were not necessary where plaintiffs declined to seek an order setting aside already-executed short-term water service contracts, but rather sought only to impose environmental review requirements on Reclamation's efforts to enter into

10

> future short-term water service contracts. *Pac. Coast Fed'n of Fishermen's Associations v. U.S. Dep't of the Interior*, 929 F. Supp. 2d 1039, 1062 (E.D. Cal. 2013) [ ].

2021 WL 600952, at *3–4 (E.D. Cal. Feb. 16, 2021).

### 3. <u>Legally Protected Interest</u>

Defendant-Intervenors specifically contend that each Repayment Contract at issue in this case amounts to a "valuable, permanent right[] to delivery of CVP water, which Plaintiffs' claims for relief threaten." (Doc. No. 131-1 at 15.) In addition, as mentioned in *CBD*, the WIIN Act Repayment Contracts are "repayment" contracts that, unlike "water service" contracts, allow contractors to prepay the repayment obligation imposed by Reclamation law, which in turn can reduce annual payments to Reclamation; these contracts also provide significant opportunities for relief from certain other requirements of Reclamation law, including acreage limitations. 2021 WL 600952 at *6 (citing WIIN Act, Pub. L. No. 114-322 § 4011(a), (c)(1), 130 Stat. at 1878–80). These bargained-for terms are no less "fundamental" than the lease terms designed to ensure employment opportunities and income for Navajo Nation members at issue in *Dawavendewa*. *Id*. (citing *Dawavendewa*, 276 F.3d at 1157).

Plaintiffs counter that under operative provisions of Reclamation law and the terms of the Repayment Contracts themselves, the Repayment Contracts are not binding upon Reclamation until they "have been confirmed by a decree of a court of competent jurisdiction." (Doc. No. 134 at 12 (quoting 43 U.S.C. § 423e).) For example, one of the WIIN Act Repayment Contracts, executed on February 28, 2020, provides at Article 47:

> Promptly after the execution of this amended Contract, the Contractor will provide to the Contracting Officer a certified copy of a final decree of a court of competent jurisdiction in the State of California, confirming the proceedings on the part of the Contractor for the authorization of the execution of this amended Contract. This amended Contract shall not be binding on the United States until the Contractor secures a final decree.

(Doc. No. 133-1 (Irrigation and M&I Contract No. 14-06-200-495A-IR1-P between Reclamation and Westlands Water District) at 77.) According to plaintiffs, "[a]bsent such a decree, the [absent] contractors cannot claim that a legally protected interest is impaired by this suit. To the contrary, [they] have at most a mere expectancy, which might ripen into a 'legally protected interest' only after the

/////

11

1 Repayment Contracts 'have been confirmed by a decree of a court of competent jurisdiction." (Doc.
2 No. 134 at 12 (internal citations omitted).)

3 As the undersigned explained in *CBD*, "[i]n theory, plaintiffs' argument could have some
4 traction," based upon the decision in *Northern Alaska Environmental Center v. Hodel*. *CBD,* 2021 WL
5 600952 at *5. In *Northern Alaska Environmental Center*, absent miners submitted mining plans and
6 access permits to the National Park Service ("NPS") for review but had not yet received approval of
7 those plans and permits. 803 F.2d 466, 469 (9th Cir. 1986). Environmental plaintiffs sued the
8 reviewing agencies to enjoin any "further" approvals of mining plans. *Id*. Because the subject matter
9 of the dispute concerned "NPS procedures regarding mining plan approval," the Ninth Circuit reasoned
10 that, although the miners were certainly "interested" in how stringent those requirements would be,
11 "miners with *pending* plans have no legal entitlement to any given set of procedures," and therefore did
12 not have to be joined to the suit. *Id*. (emphasis added).

13 But, as the undersigned explained in *CBD*, "as a matter of contract law, the present case is not
14 truly analogous to *Northern Alaska* because the WIIN Act [Repayment Contracts] have already been
15 executed." 2021 WL 600952 at *5. This is because "even when an executed water repayment contract
16 *may be voidable* by one party, this *does not mean that it is void*." *Id*.

> As the Eighth Circuit explained in *Concerned Irrigators v. Belle Fourche Irrigation District*, "[f]ederal law gives the United States authority to enter into repayment contracts with irrigation districts, but specifies that these contracts are not 'binding on the United States until the proceedings on the part of the district for the authorization of the execution of the contract with the United States shall have been confirmed by decree of a court of competent jurisdiction, or pending appellate action if ground for appeal be laid.' 43 U.S.C. § 511 (1994)." 235 F.3d 1139, 1144 (8th Cir. 2001). The Eighth Circuit reasoned that "[e]ven if the United States is not bound by the [ ] contract because it was not judicially confirmed, the contract is not necessarily invalid." *Id.* (citing Restatement (Second) of Contracts § 7 & cmt. a (1979) (where a party has the power to avoid the legal relations created by a contract, that contract is voidable but not void)). In *Concerned Irrigators*, the Eighth Circuit enforced the terms of a repayment contract against third party landowners within the contracting irrigation district, even though the contract had not been judicially confirmed because there was "no evidence that the United States has ever attempted to escape any obligation created by the contract." *Id*. In a nutshell, that contract, although potentially voidable by the United States, was not void. *See id*.

28 *Id*. As was the case in *CBD*, as of the date of this order, there is no allegation or even a suggestion that

12

the United States disclaims its contractual obligations to the absent contractors. The holding in *Concerned Irrigators* therefore supports a finding that the WIIN Act Repayment Contracts can create legal rights even in the absence of judicial confirmation.

### 4. Impairment of Interest

Given the conclusion reached above, the question becomes whether this lawsuit may impair the legal rights created by the absent contractors' WIIN Act Repayment Contracts. *See Dine*, 932 F.3d at 852. Plaintiffs first argue that even if the WIIN Act Repayment Contracts were set aside, Reclamation could nonetheless deliver CVP water to the absent contractors pursuant to their existing Interim Contracts. (Doc. No. 134 at 12.) Presumably, plaintiffs are incorporating by reference their arguments—discussed above—regarding the continued validity of those Interim Contracts. Because those arguments have been rejected, there is no support for plaintiffs' parallel contention that the Interim Contracts can operate as a fallback mechanism for delivery of CVP water.

Plaintiffs also argue that they seek only Reclamation's compliance with the APA and NEPA. (*See id*. at 13.) Plaintiffs assert that their claims are therefore like those claims in *Makah* that were determined to be merely requests for prospective injunctive relief against future decision-making under challenged regulations for which joinder of potentially interested third parties was not required. (*Id*.) Claims concerning the "future conduct of the administrative process" are indeed the type that the Ninth Circuit has found "reasonably susceptible to adjudication without the presence of other parties to the administrative process." *Makah*, 910 F.2d at 559; *see also Cachil Dehe Band of Wintun Indians v. California*, 547 F.3d 962, 977 (9th Cir. 2008) ("Rule 19 necessarily confines the relief that may be granted . . . to remedies that do not invalidate the licenses that have already been issued to the absent Compact Tribes.") But this entire argument is based on a premise—that plaintiffs seek only Reclamation's compliance with lawful administrative process—that is not entirely true. For example, the second claim in the SAC alleges that Reclamation should have prepared certain environmental documents under NEPA before approving the WIIN Act Repayment Contracts and therefore that Reclamation's approval of those contracts "should be declared unlawful and set aside under the APA." (SAC at ¶ 88.) Likewise, the third claim alleges that Reclamation's failure to prepare any environmental review before entering into the WIIN Act Repayment Contracts violates the CVPIA.

(SAC at ¶ 94.) As part of that claim, plaintiffs allege that "Reclamation's entry into these repayment contracts should be declared unlawful and set aside under the APA." (*Id*.)

If Reclamation's approvals of these WIIN Act Repayment Contracts are set aside, the entities that hold those contracts would have no right to the delivery of CVP water under them. Moreover, as discussed above, no other contract would provide them with CVP water in the interim. Under these circumstances, the benefit of those bargained-for terms unique to a repayment contract could be "grievously impaired" if, as a result of this case, the court were to "set aside" those repayment contracts. *See Dawavendewa*, 276 F.3d at 1157.

Before concluding whether the identified legally protected interest exists would be impaired or impeded by the suit, the court must examine whether any such impairment could be minimized "if the absent party is adequately represented in the suit." *Makah*, 910 F.2d at 558 (internal citation and quotation omitted). "In assessing an absent party's necessity under [Rule] 19(a), the question whether that party is adequately represented parallels the question whether a party's interests are so inadequately represented by existing parties as to permit intervention of right under [Rule] 24(a)." *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992). The Ninth Circuit employs the following three-step inquiry to determine if a non-party is adequately represented by existing parties:

> A non-party is adequately represented by existing parties if: (1) the interests of the existing parties are such that they would undoubtedly make all of the non-party's arguments; (2) the existing parties are capable of and willing to make such arguments; and (3) the non-party would offer no necessary element to the proceeding that existing parties would neglect.

*Sw. Ctr. for Biological Diversity v. Babbitt*, 150 F.3d 1152, 1153–54 (9th Cir. 1998) (citing *Shermoen*, 982 F.2d at 1318).

Plaintiffs contend that Federal Defendants and Defendant-Intervenors "have a strong interest in defending the validity of [the WIIN Act] Repayment Contract approvals, and are capable of making all necessary arguments to defend Reclamation's actions." (Doc. No. 134 at 13.) Plaintiffs further argue that because "the parties will be limited to this Court's review of Reclamation's actions using Reclamation's existing Administrative Record, the absent parties would not be able to supply any new or novel 'necessary element' that would otherwise be neglected." (*Id*. at 13–14.) Here, as was the case in *CBD*, federal defendants "cannot adequately represent the interests of absent contractors because

they represent the government and a broad set of interests that are not the same as public or private water contractors." *CBD*, 2021 WL 600952, at *7 (quoting *Kempthorne*, 539 F. Supp. 2d at 1187–88). As for the Defendant-Intervenors, they point out that some of the absent contractors are municipal water districts and other entities that have different types of customers and to whom different laws apply. As a result, they will not "undoubtedly make all of the non-party's arguments." *Sw. Ctr.*, 150 F.3d at 1153–54.

For these reasons, the court concludes that the absent contractors are "required to be joined" under Rule 19(a)(1)(B)(i) because they "claim[ ] interest[s] relating to the subject of the action and [are] so situated that disposing of the action in [their] absence may as a practical matter impair or impede [their] ability to protect [that] interest."

**5.** **The Public Rights Exception Does Not Bar a Finding of Necessity**

Plaintiffs invoke the "public rights exception" to Rule 19's joinder requirements. (Doc. No. 134 at 14.) "Under this exception, even if [the absent party is a] necessary party, [the absent party is] not deemed indispensable, and, consequently, dismissal is not warranted." *Kescoli v. Babbitt*, 101 F.3d 1304, 1311 (9th Cir. 1996) (citing *Makah*, 910 F.2d at 559 n. 6). Generally, to fall within the public rights exception, "the litigation must transcend the private interests of the litigants and seek to vindicate a public right." *Id*. (internal citation omitted). For the exception to apply, the litigation must not "destroy the legal entitlements of the absent parties." *Id*. (citations omitted) (finding the public rights exception inapplicable in that case because rights of absent parties under lease agreements "could be significantly affected" if the action proceeded in their absence).

However, the public rights exception does not operate as an exception to a finding of "necessity." Rather, it operates to exempt claims from being dismissed due to an absent party otherwise being deemed indispensable. *Id*. Here, because no party suggests the absent contractors are indispensable, the public rights exception is inapplicable.

In sum, the absent contractors must be joined because plaintiffs seek to set aside the executed WIIN Act Repayment Contracts. Assuming plaintiffs retain this prayer for relief, any amended complaint must name the contractors that are parties to the challenged contracts. As this court has indicated previously, the undersigned will not permit duplicative briefing and will not allow the

15

numerosity of parties to multiply the proceedings in ways that will effectively deny plaintiffs access to this forum.

## CONCLUSION

For the reasons set forth above:

(1) The motions to dismiss the first cause of action in the SAC as moot brought on behalf of the Federal Defendants (Doc. No. 130) and the Defendant-Intervenors (Doc. No. 131) are GRANTED WITHOUT PREJUDICE;

(2) The motion to compel joinder of the absent contractors whose WIIN Act Repayment Contracts are challenged in this case brought on behalf of the Defendant-Intervenors (Doc. No. 131) is GRANTED; and

(3) Within thirty (30) days of the date of this order, plaintiffs are directed to file an amended complaint consistent with this order.

IT IS SO ORDERED.

Dated: **October 29, 2021**

*Dale A. Drozd*
UNITED STATES DISTRICT JUDGE