# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

NORTH COAST RIVERS ALLIANCE, et al.,

          Plaintiffs,

      v.

UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,

          Defendants,

WESTLANDS WATER DISTRICT, et al.,

          Defendant-Intervenors.

Case No. 1:16-cv-00307 JLT SKO

ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT

(Docs. 230, 233)

## I.   INTRODUCTION

Before the Court for decision are motions for summary judgment concerning Plaintiffs'[1] sole remaining theory of relief advanced in its Third Amended Complaint (TAC) (Doc. 156):  that the U.S. Bureau of Reclamation violated 43 U.S.C. § 423e by executing a contract for the delivery of water from the federal Central Valley Project (CVP) with Defendant Intervenor Westlands Water District pursuant to the 2016 Water Infrastructure Improvements for the Nation (WIIN) Act, Pub. L. No. 114-322, 130 Stat. 1628 (2016), notwithstanding the fact that Westlands

---

[1] Plaintiffs are a coalition of environmental groups led by the North Coast Rivers Alliance.

1

failed to first secure a judicial decree confirming and validating Westlands' authority to enter into that contract. (Doc. 156, ¶¶ 160–183.)[2] Plaintiffs assert that § 423e precludes Reclamation from delivering water under that contract absent validation. (*Id*., ¶ 162.) Federal Defendants and Westlands have moved for summary judgment. (Docs. 230, 233.) Plaintiffs oppose the motion (Doc. 235), and Defendants each filed replies (Docs. 238, 239). The matter was taken under submission on the papers pursuant to Local Rule 230(g). (Doc. 241.) For the reasons set forth below, the motions are **GRANTED**.

## II.    BACKGROUND

The Court provided extensive background information on the CVP and the WIIN Act in its decision in the related case *Center for Biological Diversity v. United States Bureau of Reclamation*, No. 1:16-CV-00307 JLT SKO, 2025 WL 1798970, at *2 (E.D. Cal. June 30, 2025). In the interest of expedience, the Court relies on relevant portions of that background section here as well:

> The CVP and California's State Water Project (SWP), "operated respectively by [Reclamation] and the State of California, are perhaps the two largest and most important water projects in the United States." *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 592 (9th Cir. 2014). "These combined projects supply water originating in northern California to more than 20,000,000 agricultural and domestic consumers in central and southern California." *Id*. As one part of CVP operations, Reclamation releases water stored in CVP reservoirs in northern California; this water then flows down the Sacramento River to the Sacramento-San Joaquin Delta (Delta). *See id*. at 594. Pumping plants in the southern region of the Delta (South Delta) then divert the water to various users south of the Delta. *See id*. at 594–95.
>
> "The CVP supplies water to over 250 long-term water contractors under contracts with the Bureau." *See State Water Res. Control Bd. Cases*, 136 Cal. App. 4th 674, 692 (2006). "Most of those contractors

---

[2] The third and fourth claims in the TAC were to be the subject of cross motions for summary judgment. (*See* Doc. 228.) However, the Plaintiffs ultimately did not file any motion for summary judgment, explicitly limited its third claim for relief to theories arising under 43 U.S.C. § 423e, and abandoned the entire fourth claim for relief. (Doc. 235 at 8.) This has narrowed the dispute to the § 423e claim. (*See* Docs. 238 (Federal Defendants' reply), 239 (Defendant Intervenors' reply).) All other claims advanced by Plaintiffs were previously dismissed, (*see* Doc. 78 and 151), or were adjudicated in a ruling issued on June 30. 2025. (Doc. 248.) In that June 30, 2025 Order, the Court indicated it might resolve the § 423e issue alongside other claims addressed by the pending motion to dismiss in *Hoopa Valley Tribe v. U.S. Bureau of Reclamation, et al*., 1:20-cv-1814 JLT EPG. (*See id*. at 3 n.7.) However, the Court has determined that it is most efficient to issue a stand-alone order.

put the water to agricultural use." *Id*. Among other things, these contracts are the means through which the government recoups some of federal funds spent constructing the CVP, along with a share of the project's operation and maintenance expenses. *See Grant Cnty. Black Sands Irrigation Dist. v. U.S. Bureau of Reclamation*, 579 F.3d 1345, 1351–52 (Fed. Cir. 2009); *see also* 43 U.S.C. § 485h(e). *Grant County* provides additional background on the "general principles of reclamation law and the different types of contracts for the delivery of project water," which provides helpful context for this case.

Modern reclamation law has its roots in the Reclamation Act of 1902, Pub. L. No. 57–161, 32 Stat. 388, as amended, 43 U.S.C. §§ 371 et seq., which laid the groundwork for a vast and ambitious federal program to irrigate the arid lands of the western states. Under the 1902 Act, the Secretary of the Interior was charged with building dams, canals, and other irrigation facilities to be financed through the sale of federally owned lands. 43 U.S.C. §§ 391, 411. It was expected that the owners of the newly irrigated lands would repay their share of the construction costs of the reclamation projects over a 10–year period. Reclamation Act of 1902, § 4, 32 Stat. 388, 389 (current version at 43 U.S.C. §§ 419, 461). The operation and maintenance costs of the projects, however, were to be the responsibility of the federal government until such time as the construction payments had been made for the major portion of the lands irrigated by the projects, at which point the management and operation of the projects would pass to the landowners. 43 U.S.C. § 498.

It soon became clear that the landowners' repayment obligations far exceeded their ability to pay. Congress therefore extended the repayment period to 20 years in 1914 and to 40 years in 1926. 43 U.S.C. §§ 423e, 475; *see* S.T. Harding, Background of California Water & Power Problems, 38 Cal. L. Rev. 547, 557 (1950). In light of the repayment extensions, Congress required the landowners to reimburse the federal government for their share of the annual operation and maintenance costs of the projects. 43 U.S.C. §§ 492, 493. The Secretary of the Interior, however, was granted discretionary authority to transfer the operation and maintenance of all or any part of the irrigation project works to a water users' association or an irrigation district. *Id*. § 499.

In the wake of the Great Depression, as landowners became increasingly unable to meet their repayment obligations, Congress enacted the Reclamation Project Act of 1939. The goal of the 1939 legislation was to restructure the landowners' repayment obligations on the basis of ability to pay, while still protecting the federal government's financial investment in the reclamation projects. *See* 43 U.S.C. § 485. To that end, the 1939 Act addressed the Secretary's contracting authority in two respects . . . .

First, in section 9(d) of the 1939 Act Congress authorized the Secretary of the Interior to enter into the classic repayment-

3

type contract contemplated by the 1902 Act. Such contracts, typically called "9(d) contracts," were made available only to irrigation districts, water users' associations, and other organizations "satisfactory in form and powers to the Secretary." 43 U.S.C. § 485h(d). Under a 9(d) contract, the organization would receive project water in exchange for assuming a "general repayment obligation," which had to be repaid "over a period of not more than 40 years." *Id*. § 485h(d)(3). The repayment obligation was defined in the 1939 Act as that "part of the construction costs allocated by the Secretary" to the organization. *Id*. § 485h(d)(2). Thus, the 9(d) contract was in form and substance a straightforward application of the repayment principle that governed reclamation law prior to the 1939 Act.

Second, in section 9(e) of the 1939 Act Congress created a new source of contracting authority for the Secretary, known as a "9(e) contract." Section 9(e) provided that, "[i]n lieu of entering into a repayment contract pursuant to the provisions of subsection (d)," the Secretary had discretion to enter into "either short- or long-term contracts to furnish water for irrigation purposes." The water supplied under 9(e) contracts was supposed to be provided "at such rates as in the Secretary's judgment will produce revenues at least sufficient to cover an appropriate share of the annual operation and maintenance cost and an appropriate share of such fixed charges as the Secretary deems proper." Although 9(e) contracts were described as either "short-term" or "long-term," the 1939 Act did not define those terms or indicate that any legal consequences would turn on the "short-term/long-term" distinction. 43 U.S.C. § 485h(e).

The principal difference between 9(d) and 9(e) contracts under the 1939 Act was that under a 9(d) contract, the irrigation district or water users' association assumed an obligation to repay the construction costs of the project works in fixed annual installments over a predetermined period of time. By contrast, a 9(e) contract was merely a contract to receive project water at an annual rate set by the Secretary.

\*\*\*

*Grant Cnty.*, 579 F.3d at 1351–54. Reclamation entered into numerous long-term [section 9(e)] "water supply" contracts to supply water to users south of the Delta. *Id*. These contracts began to expire in the early 2000s. *Id*.

\*\*\*

In the mid-2000s, Reclamation began the process of preparing project-level [environmental review documents] prior to renewing long term water service contracts for south-of-Delta users, but no final [environmental documents were] ever adopted. *PCFFA v. DOI*, 929 F. Supp. 2d at 1043; (*see also* [ ], Doc. 156, ¶ 130). Instead of finishing the long-term contract renewal process, Reclamation

entered into a series of two-year interim contracts which were subjected to a degree of [environmental] review, and which were also challenged in court. *See PCFFA v. DOI II*, 655 F. App'x 595. . . Subsequent interim contracts also became the subject of litigation over the sufficiency of [that environmental] review, *N. Coast Rivers All. v. United States Dep't of the Interior*, 1:16-CV-00307-DAD-SKO, 2021 WL 5054394, at *1 (E.D. Cal. Nov. 1, 2021), but the most recent of those claims was dismissed without prejudice as moot when the interim contracts were converted under the WIIN Act. *Id*. at *4 (E.D. Cal. Nov. 1, 2021) ("Because it is possible to imagine a scenario in which one or more of the WIIN Act Repayment Contracts are set aside, it is likewise possible that plaintiffs' claims could be revived.").

*Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, No. 1:16-CV-00307 JLT SKO, 2025 WL 1798970, at *1–9 (E.D. Cal. June 30, 2025) (internal record citations and footnotes omitted).

Passed on December 16, 2016, the WIIN act addresses a wide array of water resource and related infrastructure issues across the United States. *See generally* Pub. L. 114-322, 130 Stat. 1628 (2016). Of relevance here is section 4011(a)(1), which commands Reclamation, upon request of the contractor, to convert water service contracts into repayment contracts. After the WIIN Act took effect, more than seventy contractors, including Westlands, requested Reclamation to convert their water service contracts into prepayment contracts. (*See* July 16, 2019 Decl. of Michael P. Jackson, Doc. 106-1, ¶ 4.) In mid-2019, Reclamation began negotiating with Westlands and other CVP water contractors to convert their existing water service contracts to repayment contracts under the WIIN Act. (*Id*., ¶ 6.)

On October 25, 2019, Westlands filed a Complaint for Validation Judgment in Fresno County Superior Court seeking a court judgment validating Westlands' proposed repayment contract with Reclamation. *See Westlands Water District v. All Persons Interested*, Fresno County Superior Court Case No. 19CECG03887.[3] On or about December 30, 2019, Westlands filed a Motion for Validation of Contract in which it requested the Superior Court to enter a judgment validating Westlands' repayment contract with Reclamation. (*See* Decl. of Stephan Volker, Doc. 235-2, ¶ 11.) That motion was denied because the contract did "not meet [validation] requirements for provisions unrelated to debt because it is a proposed contract, not

---

[3] The Court takes judicial notice of the documents from this and related cases before the Fresno County Superior Court attached to the declaration of Plaintiffs' counsel as well as the publicly available dockets from those cases. *See* Fed. R. Evid. 201.

an executed contract" and because "the requested finding of compliance with the Brown Act[, Cal. Gov. Code §§ 54950 et seq.,] cannot be made." (*See* Doc. 235-1 at 9–10.) Westlands' subsequent attempts to validate its repayment contract were not successful and all avenues of appeal appear to have been exhausted. (*See* Doc. 235-2, ¶¶ 13–16); *see also Westlands Water Dist. v. All Persons Interested*, 95 Cal. App. 5th 98 (2023), as modified (Sept. 1, 2023). Attempts to validate two other repayment contracts negotiated between Reclamation and Westlands Water District Distribution District No. 1 and No. 2, respectively, met with the same fate in state court. (*See* Doc. 235-2, ¶¶ 22–23.) The third cause of action appears to challenge all three of these Contracts, (*see* TAC, ¶¶ 164–83), which the Court collectively refers to as "Westlands WIIN Act Repayment Contracts" or "Westlands Repayment Contracts."

III.   **LEGAL STANDARDS**

The Court's jurisdiction to adjudicate Plaintiffs' § 423e claim derives from the Administrative Procedure Act (APA). This is because Reclamation Act does not create a private right of action, *Long v. Salt River Valley Water Users' Ass'n*, 820 F.2d 284, 288 (9th Cir. 1987); *Buynak v. United States Dep't of the Interior*, No. CV 22-7271-MWF (MAAx), 2023 WL 3549628, at *10 (C.D. Cal. Mar. 1, 2023). Thus, the APA governs judicial review of any claim premised upon it. No party suggests otherwise.

According to § 702 of the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Under the APA, the Court shall "hold unlawful and set aside agency action, findings, and conclusions found to be," among other things "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id*. § 706(A). In many APA cases, judicial review is limited to the administrative record. In such situations, a slightly modified approach to summary judgment is applied, whereby the Court determines "whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985)).[4]

---

[4] There appears to be no dispute here that it is appropriate to decide this claim on the administrative record.

This case raises a question of statutory interpretation, which the Ninth Circuit instructs courts to generally approach as follows:

> "As in any case of statutory construction, our analysis begins with the language of the statute." *United States v. Harrell,* 637 F.3d 1008, 1010 (9th Cir. 2011) (internal quotation marks omitted). "To aid our inquiry, we rely on our established rules of statutory construction . . . ." *Id.* We also look to similar provisions within the statute as a whole and the language of related or similar statutes to aid in interpretation. *See Jonah R. v. Carmona,* 446 F.3d 1000, 1006–07, 1011 (9th Cir. 2006). "[S]tatutory interpretations which would produce absurd results are to be avoided." *Arizona St. Bd. for Charter Schs. v. U.S. Dep't of Educ.,* 464 F.3d 1003, 1008 (9th Cir. 2006) (internal quotation marks omitted). If a statute is ambiguous, we may "consult the legislative history, to the extent that it is of value, to aid in our interpretation." *Merkel v. Comm'r,* 192 F.3d 844, 848 (9th Cir.1999). Finally, in some cases, a statute's "purpose" may shed light on the interpretive question. *See Jonah R.,* 446 F.3d at 1005, 1010–11.

*United States v. LKAV*, 712 F.3d 436, 440 (9th Cir. 2013).

## IV.   ANALYSIS

### A.   Standing

The opening briefs argued that the allegations in the TAC fail to establish Article III standing. (*See* Doc. 230-1 at 20.) In opposition, Plaintiffs pointed to standing declarations submitted earlier in this lawsuit and, in an abundance of caution, also submitted an entire new round of standing declarations directed at the TAC. (Doc. 235 at 19–20; *see also* Docs. 235-3, 235-4, 235-5, 235-6.) Federal Defendants concede that the new standing declarations establish standing as to the § 423e claim. Having reviewed those declarations, the Court agrees.

### B.   43 U.S.C. § 423e Claim

43 U.S.C. § 423e provides in pertinent part:

> ***No water shall be delivered upon the completion of any new project or new division of a project until a contract or contracts in form approved by the Secretary of the Interior shall have been made with an irrigation district or irrigation districts organized under State law*** providing for payment by the district or districts of the cost of constructing, operating, and maintaining the works during the time they are in control of the United States, such cost of constructing to be repaid within such terms of years as the Secretary may find to be necessary, in any event not more than forty years from the date of public notice hereinafter referred to, ***and the execution of said contract or contracts shall have been confirmed by a decree of a***

(Docs. 230 at 1, 233 at 2, 235 at 18.)

7

*court of competent jurisdiction*.

(Emphases added.) The parties dispute whether § 423e applies to the execution of Westlands' WIIN Act Repayment Contract. Defendant Intervenors argue that § 423e does not apply here because the Contract does not address delivery of water in relation to "any new project or new division of a project." (Doc. 233-1 at 12; *see also* Doc. 238 )[5]

This Court has addressed this language before, albeit in a somewhat different context. In a December 2022 Order regarding a motion to intervene filed in *Hoopa Valley Tribe v. Reclamation*, 1:20-cv-01814 JLT EPG, U.S. District Judge Dale A Drozd addressed whether Westlands' WIIN Act Repayment Contract represented a significantly protectable interest for purposes of intervention under Federal Rule of Civil Procedure 24(a)(2). (*Hoopa*, Docket. No. 116.) The Court noted that the Contract, though <u>voidable</u> because it had not been validated, was not <u>void</u>, in part because the United States had not disclaimed its contractual obligations to Westlands. (*Id*. at 6.) In a footnote, the Court rejected the plaintiff's reliance on 43 U.S.C. § 423e, having "not even attempt[ed] to explain" why the "any new project or new division of a project" language applied to the Contracts. (*Id*. at 7 n.7.)

Plaintiffs at least attempt to explain that language here. Their central point appears to be that because the CVP did not exist when § 423e was enacted in 1926, the CVP qualifies *ipso facto* as a "new" project for purposes of § 423e. (Doc. 235 at 22.) The argument continues:

> [I]t is the CVP whose cost is being repaid by the subject repayment contracts. The repayment contracts are simply the mechanism by which that cost is being repaid, albeit critical to the intended transfer of ownership and commensurate delivery of CVP water. The reclamation and irrigation facilities that deliver the water in question are the sources of the construction costs and the reasons they were incurred. And those facilities did not exist when section 423e was adopted in 1926. Perforce, these facilities are "new" in reference to this section, and to what was contemplated when it was adopted.
>
> It is thus the date when the CVP was built, and when the costs for its construction were incurred, that is the operative date for determining if the CVP and its costs of construction were a "new" project.

[5] Defendant Intervenors also argue that § 423e cannot possibly be applied to any Repayment Contract held by a municipal or industrial (M&I) water district because § 423e applies by its own terms only to contracts "with an irrigation district or irrigation districts organized under state law." (Doc. 233-1 at 13.) In response, Plaintiffs entirely disclaim advancing any challenge to an M&I contract. (Doc. 235 at 23.) The Court will therefore not address this issue.

8

> Defendants have made no showing that construction of the CVP had already begun before section 423e was enacted on May 25, 1926. The CVP's construction did not begin until roughly a decade later, when the Great Depression prevented the State of California from building these facilities (that its laws had separately authorized), and the federal government rushed to fill the financial void. Thus, both the CVP and the costs incurred to build it fall squarely within the terms "new project" or "new division of a project" as used in section 423e.

(Doc. 235 at 23.)

Even assuming Plaintiffs are correct that the CVP was at some point a "new project" and/or the WIIN Act Repayment Contracts concern the delivery of water from a division of a project that was (or is) "new" relative to the passage of § 423e, this still does not satisfactorily demonstrate that § 423e applies here. When the plain language of § 423e is read in its entirety, it is apparent that § 423e directs itself at a point in time—"upon the completion of any new project or new division of a project"—and prohibits delivery of water from that newly-completed project unless and until "a contract or contract" that has been "confirmed by a decree of a court of competent jurisdiction" has "been made" between Reclamation and an irrigation district organized under state law. Relatedly, the statute uses the phrase "until a contract or contracts . . . shall have been made," which can only be read as referring to a specific event that must occur after "completion" but before the first drop of water may lawfully be delivered from any "new" project. Thus, the statutory language is triggered only once for each "new" project or division: after completion but before the first water delivery. The Court can only assume from Plaintiffs' own arguments that the CVP was "completed" for purposes of § 423e long ago, and nothing in this record suggests otherwise.[6] The Court sees no material ambiguity in this language.

This plain language interpretation is consistent with the statute's stated purpose, articulated in 43 U.S.C. § 423f, which explains that "[t]he purpose of sections 423 to 423g and 610 of this title is the rehabilitation of the several reclamation projects and the insuring of their future success by placing them upon a sound operative and business basis, and the Secretary of

---

[6] *United States v. State Water Res. Control Bd.*, 182 Cal. App. 3d 82, 106 (1986), a seminal state case about the CVP suggests this as well, indicating that "[t]he CVP was actually completed and in operation before permits were issued: the first permits were issued to the U.S. Bureau in 1958 (Decision 893), and the principal permits were issued in 1961 (Decision 990)."

the Interior is directed to administer said sections to those ends." Like § 423e, § 423f is directed to a foundational point in time because it requires that the noted provisions be administered to help "rehabilitate" Reclamation projects and ensure "future success" by "placing them" on sound financial footings. Even if, arguendo, § 423f can be read differently (e.g., as imposing an ongoing obligation to ensure "future success"), it does not appear that § 423e's plain language is subject to multiple interpretations, and a statute's statement of purpose cannot undermine its plain language. *See Sturgeon v. Frost*, 587 U.S. 28, 56–57 (2019) (A statute's "statements of purpose . . . cannot override [its] operative language.").

The TAC and briefs raise several additional arguments that, ultimately, the Court finds unpersuasive and/or irrelevant. Many of these arguments appear to be vestiges of the original third cause of action, which invoked both 43 U.S.C. § 423e and § 511, until the § 511 claim was formally abandoned during the briefing of the pending motions. Section 511 provides that the Secretary of the Interior "may enter into contract with any legally organized irrigation district . . . . Provided, that no contract with an irrigation district under this section . . . shall be binding on the United States until the proceedings on the part of the district for the authorization of the execution of the contract with the United States shall have been confirmed by decree of a court of competent jurisdiction, or pending appellate action if ground for appeal be laid."

The TAC makes various allegations that, while facially tied to both § 423e and § 511, can only be premised upon § 511. For example, the TAC alleges as follows:

> Reclamation's execution on or about February 28, 2020, May 29, 2020, September 28, 2020, and October 22, 2020, with effective dates of June 1, 2020, October 1, 2020, and November 1, 2020, of its repayment contract with Westlands notwithstanding Westlands' failure to first secure a judicial decree confirming and validating Westlands' authority to enter into that contract, and Reclamation's purported disavowal, by letter dated May 29, 2020, of its statutory duty to require Westlands to secure that judicial decree before recognizing that contract as valid and enforceable against Reclamation, violate 43 U.S.C. §§ 423e and 511.

(TAC, ¶ 181.) Section 511 permits Reclamation to enter into contracts and provides that those contracts shall not be "binding" on the United States until validated. In contrast, § 423e bars the delivery of water under certain circumstances unless an executed contract with a water district has

10

been validated. Put another way, § 511 concerns the execution and validity of an irrigation contract, while § 423e imposes consequences under specific circumstances if an irrigation contract is not validated. For this reason, paragraph 181 of the TAC, which speaks of contract validity and enforceability, advances no viable theory of liability under § 423e.

Relatedly, Plaintiffs also appear to make a "course of performance" argument by pointing to Westlands' multiple efforts to obtain validation of their repayment contracts. Plaintiffs argue these efforts are "tacit recognition" that validation is required by Reclamation Law. (Doc. 235 at 9.) But, as Defendant Intervenors point out, validation is required under the terms of Westlands' Repayment Contracts. (Doc. 239 at 3 (citing AR US24804, ¶ 47).)[7] Moreover, even if Westlands' efforts to obtain validation could stand as evidence that they believed such validation was required under Reclamation Law (as opposed to only under the terms of the contracts), the more obvious source of that requirement is § 511, not § 423e, and the § 511 claim has been abandoned.

Finally, Plaintiffs recount communications between Westlands' former General Manager and Reclamation about Westlands' attempts to obtain contract validation. (*See* TAC, ¶¶ 173–77; *see also* Doc. 235 at 12.) Plaintiffs assert Westlands mislead Reclamation into agreeing to honor Westlands' Repayment Contracts notwithstanding the absence of validation. (*Id*.) The Court finds it unnecessary to delve into the details of these communications and related arguments because, even if Westlands did mislead Reclamation,[8] this has no bearing on the essence of the legal claim presented here, namely, whether § 423e requires validation prior to water delivery. If Plaintiffs' interpretation of § 423e were correct (and it is not), nothing suggests Reclamation could waive the statutory requirement, so whether Reclamation was misled into doing so is irrelevant.

In sum, the Court finds that the plain language of § 423e does not preclude the delivery of water under Westlands' WIIN Act Repayment Contracts simply because those contracts have not been validated. Thus, Federal Defendants and Defendant Intervenors are entitled to summary

---

[7] The contract terms, or Reclamation's actions related to the validity of the contracts themselves, are not the subject of the present summary judgment motions.

[8] Defendant Intervenors ask the Court's to take judicial notice of a letter from Reclamation's then Regional Director to two San Joaquin County Supervisors which appears to publicly disclaim that Reclamation was misled in any material way by these communications. (*See* Doc. 240 at 10.) The Court finds it unnecessary to address this request or the letter.

11

judgment on the § 423e claim.

## V.    CONCLUSION AND ORDER

For the reasons set forth above:

1.    Federal Defendants' (Doc. 230) and Defendant Intervenors' (Doc. 233) motions for summary judgment on the § 423e claim presented in the third claim for relief are **GRANTED**.

2.    The Clerk of Court is directed to enter judgment in favor of Defendants and Defendant Intervenors and against Plaintiffs and to **CLOSE THIS CASE**.

IT IS SO ORDERED.

Dated:    **March 26, 2026**

UNITED STATES DISTRICT JUDGE